## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EDISON KENNEDY, LLC,

     Plaintiff,

v.                                                    CASE NO. 8:20-cv-1416-T-02SPF

SCOTTSDALE INSURANCE COMPANY,                CONSOLIDATED

     Defendant.
_____/

COUNTER CULTURE HOSPITALITY, LLC,

     Plaintiff,

v.                                                    CASE NO. 8:20-cv-1417-T-02AAS

SCOTTSDALE INSURANCE COMPANY,

     Defendant.
_____/

## <u>ORDER</u>

These consolidated cases come before the Court on Defendant's motion to dismiss the amended complaint with prejudice in the case filed by Plaintiff Edison Kennedy, LLC ("Edison") (Ed. Dkt. 35),[1] Defendant's motion to dismiss the amended complaint with prejudice in the case filed by Plaintiff Counter Culture Hospitality, LLC ("Counter Culture") (CC Dkt. 33), and the responses, replies, and

---

[1] The Edison docket entries will be denoted as "Ed. Dkt. ___" and the Counter Culture docket entries as "CC Dkt. ___."

supplemental authorities.  The amended complaints address similar insurance policies and contain similar allegations with the exception of one additional count in the Edison amended complaint (Ed. Dkt. 31 ¶¶ 154–60 – Count XIII reformation).  After hearing oral argument of counsel on December 1, 2020, and carefully considering the allegations of the amended complaints (Ed. Dkt. 31; CC Dkt. 30), the insurance policies, and the applicable law, the Court grants the motions with prejudice as to all counts.

## **Background**

In these removed actions, Plaintiffs, as insured restaurant owners, ask for a declaration that their "all risks" commercial property policies cover their business losses suffered after state and local governments issued orders placing regulations and restrictions on restaurants.[2]  The several orders of the state, county, and city cite to the spread of coronavirus disease 2019 ("COVID-19"), which is caused by the coronavirus SARS-CoV-2.  In addition to a coverage determination, both actions plead damages for breach of contract based on Defendant Scottsdale Insurance Company's ("Scottsdale") denial of their claims.  Edison additionally seeks redress under the alternative theory of reformation of the insurance contract, which pertains only to the extent of coverage for one of its two restaurants.

---

[2] The term "all risks" is somewhat a misnomer because the term does not connote the policy covers all losses.  *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 878 (11th Cir. 2020) (citing *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696–97 (Fla. 2016)).

Plaintiffs pursue coverage for business income losses by invoking the additional coverage provision applicable to actions taken by civil authorities such as state and local governments.  Ed. Dkt. 31-1at 43; CC Dkt. 30-1 at 43.  The "civil authorities" provision, which is set forth below, applies when the "covered cause of loss" causes damage to property other than the insured premises.  Ed. Dkt. 31-1 at 43; CC Dkt. 30-1 at 43.  Applying this section, Plaintiffs argue, avoids the ever-growing number of cases denying coverage based on the lack of direct physical loss to the insureds' property.  *See* cases cited at Ed. Dkt. 35 at 14–15 n.4 and CC Dkt. 33 at 14 n.4.  To that end, Plaintiffs rely on damages caused to another restaurant located no more than 4 miles from any of their insured properties.

## The Policies

The Edison policy was in effect from October 29, 2019 through October 29, 2020, and the Counter Culture policy from November 15, 2019 through November 15, 2020.  Ed. Dkt. 31 ¶ 13; CC Dkt. 30 ¶ 13.  The policies provide coverage under the "Building and Personal Property Coverage Form" for the "*direct physical loss of or damage to Covered Property* at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  Ed. Dkt. 31-1 at 26; CC Dkt. 30-1 at 26 (emphasis added).  In addition to damage to the building and personal property, the policies provide under the "Business Income (and Extra Expense) Coverage Form" for coverage for loss of business income, extra expense,

3

extended business income, and loss of access incurred for suspension of business operations during the restoration period.[3]

The policies' Business Income Form contains six separate sections (A–F) under "Coverage."  Section A.1. titled "Business Income" defines business income[4] and provides in pertinent part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by *direct physical loss of or damage to property at premises* which are described in the Declarations . . . . The loss or damage must *be caused by or result from a Covered Cause of Loss*.

Ed. Dkt. 31-1 at 42; CC Dkt. 30-1 at 42 (emphasis added).  Section A.2. titled "Extra Expense" defines extra expense as:

> necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no *direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss*.

---

[3] "Suspension" is defined in relevant part under section F titled "Definitions" in the Business Income Form as the "slowdown or cessation of your business activities."  Ed. Dkt. 31-1 at 50; CC Dkt. 30-1 at 50.  "Operations" means in relevant part the insureds' "business activities occurring at the described premises."  *Id.*  The "period of restoration" is defined for business income as beginning 72 hours, and for extra expense beginning immediately, after the direct physical loss or damage "caused by or resulting from any Covered Cause of Loss at the described premise."  *Id.*  The period ends the earlier of the date the property "at the described premises" is repaired, rebuilt, or replaced or the date when business resumes at a new permanent location.  *Id.*

[4] Business income is defined as "net income (net profit or loss before income taxes) that would have been earned or incurred[] and continuing normal operating expenses sustained, including payroll."  Ed. Dkt. 31-1 at 42; CC Dkt. 30-1 at 42.

*Id*. (emphasis added).  Extra Expense coverage is "provided at the premises described in the Declaration" if the declarations show business income coverage applies there.  *Id*.

Section A.3. refers to the "Causes of Loss Form" to determine what encompasses "Covered Causes of Loss, Exclusions and Limitations."  Ed. Dkt. 31-1 at 43; CC Dkt. 30-1 at 43.  Under the "Causes of Loss – Special Form" the "Covered Causes of Loss means *direct physical loss unless the loss is excluded or limited in this policy*."  Ed. Dkt. 31-1 at 56; CC Dkt. 30-1 at 56 (emphasis added).

Section A.5.a. titled "Civil Authority" permits additional coverage when the action of a civil authority prohibits access to the insured property provided two conditions are met:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Ed. Dkt. 31-1 at 43; CC Dkt. 30-1 at 43.[5]  Section A.5.c. titled "Extended Business Income" requires the loss of business income be "caused by *direct physical loss or damage* at the described premises *caused by or resulting from any Covered Cause of Loss*."  Ed. Dkt. 31-1 at 44; CC Dkt. 30-1 at 44 (emphasis added).

Endorsements to the policies exclude from coverage loss due to a virus, an exclusion specifically applicable to actions of civil authorities:

### EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

. . .

**A.** The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that *cover business income, extra expense or action of civil authority*.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Ed. Dkt. 31-1 at 52; CC Dkt. 30-1 at 52 (emphasis added).

### Allegations of the Amended Complaints[6]

The Tampa restaurants known as Counter Culture and Edison are owned and operated by each Plaintiff respectively.  Edison has two locations, one on Kennedy

---

[5] As noted in footnote 9, the one-mile distance requirement for "other property" was eliminated. Cena is considered "other property" under the additional coverage section.

[6] The factual allegations of the amended complaints are taken as true and construed in the light most favorable to the Plaintiffs.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

Boulevard and the other on Channelside Drive.  Counter Culture is located on Bay to Bay Boulevard.  Each restaurant lost business after the state, county, and city governments ("the civil authorities") closed restaurants in response to the outbreak of COVID-19.  All three civil authorities entered orders initially closing restaurants for indoor dining in March 2020 and later slowly reopening them to 25 percent indoor capacity in May and 50 percent indoor capacity in June.  Ed. Dkts. 31-2 through 31-34; CC Dkts. 30-2 through 30-34.  Other measures imposed by the authorities included curfews at various times, special cleaning procedures, and face mask mandates.  *Id.*

Plaintiffs maintain that the direct causes of their losses were the orders of the civil authorities.  Ed. Dkt. 31 ¶¶ 63–65; CC Dkt. 30 ¶¶ 63–65.  Despite this assertion,[7] the allegations recognize the pandemic and rapid spread of COVID-19 precipitated the issuance of the orders.  For example, Plaintiffs were forced to suspend or reduce business at their restaurants "due to Civil Authority Orders *in response to COVID-19*."  Ed. Dkt. 31 ¶ 9; CC Dkt. 30 ¶ 9 (emphasis added).  Most notably, all of the orders described in and attached to the amended complaints state they are premised on the outbreak of COVID-19 and the need to protect the safety

---

[7] *See* Plaintiffs' responses at Ed. Dkt. 42 at 10; CC Dkt. 37 at 10 ("[T]here is nothing in the pleading that the COVID-19 virus was on the premises of [Edison or Counter Culture].");  Ed. Dkt. 42 at 18; CC Dkt. 37 at 19 ("[T]he virus did not cause [Edison's or Counter Culture's] damages nor was the virus found on [their] property.").

and welfare of all residents and visitors.  Ed. Dkts. 31 ¶¶ 23–61, 31-2 through 31-34; CC Dkts. 30 ¶¶ 22–60, 30-2 through 30-34.

To fall within the additional coverage provision related to civil authorities in section A.5.a. located in the Business Income Form of the policies, Plaintiffs allege damage to property other than the covered property.  Ed. Dkt. 31-1 at 43; CC Dkt. 30-1 at 43.[8]  Plaintiffs name Cena, a restaurant located on Kennedy Boulevard, as an example of property that was damaged by the "presence of [the coronavirus.]"  Ed. Dkt. 31 ¶ 23; CC Dkt. 30 ¶ 22.  Cena was "allegedly closed down because staff contracted COVID-19 and the premises had to be fully disinfected."  *Id*.  Plaintiffs assert the civil authorities' orders "caused a direct loss to" Cena and such damage to other property (Cena) ostensibly fits within the policies' requirement that the damage result from a "covered cause of loss" thereby triggering coverage for loss resulting from the orders of civil authorities.  Ed. Dkt. 31 ¶ 64; CC Dkt. 30 ¶ 63.[9]

Plaintiffs further assert that the direct loss to Cena "prevented existing ingress and/or egress at Plaintiffs' premises and caused a loss of Business Income

[8] "When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain . . . ."  Ed. Dkt. 31-1 at 43; CC Dkt. 30-1 at 43.
[9] Although the Business Income Form refers to other property located "not more than one mile" of the insured premises, this requirement was later changed.  Ed. Dkt. 31-1 at 43; CC Dkt. 30-1 at 43.  Under the endorsement titled "Changes – Florida," "The Additional Coverage – Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply."  Ed. Dkt. 31-1 at 24; CC Dkt. 30-1 at 24.  Cena's specific location, therefore, is not at issue for the purpose of additional coverage.

8

sustained and necessary Extra Expense incurred."  Ed. Dkt. 31 ¶ 65; CC Dkt. 30 ¶ 64.  Plaintiffs allege the issuance of civil authoritative orders governing Floridians and Florida business "*in response to COVID-19 and the Pandemic*" has required Plaintiffs "to cease and/or significantly reduce operations" at Plaintiffs' restaurants and has prohibited access to Plaintiffs' restaurants.  Ed. Dkt. 31 ¶ 66; CC Dkt. 30 ¶ 65 (emphasis added).  Plaintiffs suffered losses "*due to COVID-19*, any executive orders by civil authorities that ha[ve] required the necessary suspension of business, and any efforts to prevent further losses or to minimize the suspension of business and continue operations."  Ed. Dkt. 31 ¶ 10; CC Dkt. 30 ¶ 10 (emphasis added).

Defendant denied Plaintiffs' claims for lost business income under the policies.  Ed. Dkt. 31 ¶ 10; CC Dkt. 30 ¶ 10.  Plaintiffs allege a count for declaratory relief and breach of contract for each policy coverage provision they assert including business income, extra expense, civil authority, extended business income, and access.  *Id*.  Missing from the amended complaints are any allegations that the coronavirus itself "was on the premises" of the Edison or Counter Culture restaurants.  Plaintiffs readily admit this fact in their papers and confirmed their position at the hearing.  Ed. Dkt. 42 at 10, 18; CC Dkt. 37 at 10, 19.  Even as to the Cena restaurant, there are no specific allegations that the coronavirus was on the

9

premises; rather, Cena was disinfected because the staff had contracted COVID-19.

## Legal Standard

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if the factual allegations do not state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations of the complaint must be taken as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Looking to the eight corners of the complaint and policy, where contradictions exist between the allegations of the complaint and the exhibits attached, the exhibits govern.  *Gill ex. rel. K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007)).

In this diversity case, the Court must apply the substantive law of Florida, as the forum state.  *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co*., 601 F.3d 1143, 1148 (11th Cir. 2010); *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1227 (11th Cir. 2005).  Under Florida law, interpretation of a contract of insurance is a matter of law to be decided by the court.  *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co*., 757 F.2d 1172, 1174 (11th Cir. 1985) (applying Florida law).  Florida law requires that the plain and unambiguous language of the policy controls.  *Swire Pac. Holdings, Inc. v. Zurich Ins. Co*., 845 So. 2d 161, 165

10

(Fla. 2003).  Only if the language is susceptible of more than one reasonable interpretation, "one providing coverage and the other limiting coverage," must the court resolve the ambiguity, which must be construed in favor of the insured to provide coverage.  *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).  Interpreting the contract language is necessary, however, and the act of interpreting does not impute ambiguity to its terms.  *Id.* (citing *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 31 (Fla. 2d DCA 2004)).

## Discussion

Scottsdale's position is that the "covered cause of loss" requires direct physical damage, which Plaintiffs do not and cannot allege, either to other property or to its insured premises.  Even assuming Plaintiffs could overcome the hurdle of establishing a "covered cause of loss," Scottsdale contends the virus exclusion applies to deny coverage.

Plaintiffs argue the orders of the civil authorities, not the presence of the coronavirus in any restaurant, constitute the covered cause of loss under the all-risk commercial property policies.  Plaintiffs assert their approach is unique in that most, if not all, of the cases construing business loss coverage attributable to the coronavirus rely on damage to the insured premises.  Here, Plaintiffs allege viral

11

damage to the nearby Cena restaurant, which is a covered cause of loss triggering coverage due to civil authorities' orders.

For the reasons set forth below, the Court finds no coverage under the policies. Because Plaintiffs do not allege, nor can they, a covered cause of loss under any section of the unambiguous terms of the policies, there is no coverage. Even if Plaintiffs could allege an arguably covered cause of loss, the virus exclusion applies to deny coverage.

*Direct Physical Loss or Damage caused by or resulting from a Covered Cause of Loss*

Plaintiffs concede there was no "direct physical loss or damage" to their restaurants. Plaintiffs seek to avoid this lack by reliance on the "civil authority" provision of the Business Income Form (section A.5.a.). To illustrate the significance of the type of damage required, the Court briefly addresses the rapidly emerging case law applicable to claims made attributable in some way to COVID-19.

Florida law provides a definition of the terms "direct" and "physical" where the policies, as here, do not. Although not involving a claim based on the present pandemic, a recent opinion of the Eleventh Circuit adopted Florida's construction of "direct physical loss" as one requiring the loss be "actual" representing "the diminution of value of something." *Mama Jo's Inc. v. Sparta Ins. C*o., 823 F. App'x 868, 879 (11th Cir. 2020) (citing *Homeowners Choice Prop. & Cas. v.*

*Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017) and *Vasquez v. Citizens Prop. Ins. Corp.*, 3D18-769, 2020 WL 1950831, at \*3 (Fla. 3d DCA Mar. 18, 2020)).[10]  Mama Jo's filed a claim for costs incurred to clean the restaurant and for loss of business income after debris and dust from nearby road construction had fallen on and inside the restaurant.  The restaurant remained open but required extra cleaning every day, and the customer traffic was reduced as a result of the construction.  Affirming there was no direct or physical damage to the insured property, the *Mama Jo's* court wrote that "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"  *Id*.

Other federal district courts in Florida, after *Mama Jo's* was decided, have applied the requirement that the damage or loss to property must be both "direct" and "physical" under the terms of similar policies in COVID-19 pandemic cases. In *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co*., No. 20-cv-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020), a dental office sought a declaratory judgment that the orders of Florida's governor and Miami's mayor postponing non-emergency or elective dental care constituted a covered cause of loss under the

---

[10] The district court expanded on the term "actual" as follows: "A direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'"  *Mama Jo's Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at \*9 (S.D. Fla. June 11, 2018), *aff'd*, 823 F. App'x 868 (11th Cir. 2020) (citation omitted).

business income provision of the policy.  The judge in *Nahmad* found the

complaint failed to allege any physical harm, "much less direct physical loss or

physical damage," caused by or resulting from a covered cause of loss, including

civil authorities' orders.  *Id*. at *8 (internal quotation marks omitted).  Specifically,

as to the civil authority provision, Nahmad failed to allege 1) the coronavirus

contaminated neighboring properties or that access to the insured premises was

denied because of the contamination of the neighboring properties, or 2) access to

the insured premises was completely prohibited because dentists were free to

perform medically necessary, non-elective medical procedures.  *Id*. at *8–9.

     In concluding no coverage, the *Nahmad* court relied on two district court

cases.  *Id*. at *6–7 (discussing *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-

Civ, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) and *Infinity Exhibits, Inc. v.*

*Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 20-

cv-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020)).  In *Malaube*,

the plaintiff argued Florida's emergency orders in response to the pandemic caused

a direct physical loss to its restaurant because the orders caused it to close.

Malaube did not allege the coronavirus was physically present on the premises.

*Malaube*, 2020 WL 5051581, at *7.  In recommending dismissal, the magistrate

judge commented, "[I]t is not plausible how two government orders meet th[e]

threshold when the restaurant merely suffered economic losses—not anything

tangible, actual, or physical." *Id*. at *8.  As in *Malaube*, Plaintiffs here have not alleged the coronavirus was physically present on the premises.

Following *Malaube* and *Mama Jo's*, the *Infinity Exhibits* court dismissed with prejudice a complaint that alleged only economic damage and not "physical loss" for the business losses incurred as a result of cancellation of trade shows attributable to the pandemic.  *Infinity Exhibits, Inc.*, 2020 WL 5791583, at *3. While sympathetic to the economic losses suffered as a result of the COVID-19 pandemic, the court emphasized that "there is simply no coverage under the policies if they require 'direct physical loss of or damage' to property."  *Id*. at *5.

Relying on *Nahmad*, a district judge in the Southern District of Florida dismissed with prejudice two cases in which insureds sought additional coverage under the civil authority provision of their respective policies.  *See El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, ___ F. Supp. 3d ____, 2020 WL 7251362 (S.D. Fla. Dec. 7, 2020); *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, No. 20-cv-80677-UU, 2020 WL 7251643 (S.D. Fla. Dec. 9, 2020).  The judge found the complaints lacking because there were no allegations that either a nearby property suffered direct physical loss or damage, or the governor's executive orders completely prohibited access to the insured's property based on damage to property in the immediate area, as take-out and delivery

services were always permitted.  *El Novillo Rest.*, 2020 WL 7251362, at \*6–7; *SA Palm Beach*, 2020 WL 7251643, at \*6.

Finally, the district court in *Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Ltd.*, very recently ruled in accordance with the cases noted above. No. 20-cv-771-T-36JSS, 2020 WL 7398646 (M.D. Fla. Dec. 17, 2020).  There, the plaintiff sought declaratory relief as to coverage of "the losses stemming from the governmental suspension as a result of the COVID-19 pandemic relating from the losses of income, business interruption, extra expense, contingent coverage, and other coverage extensions under the policy of insurance." *Id*. at \*1.  The plaintiff alleged it was "ordered closed in response to the Covid-19 pandemic and as a result" lost net profit. *Id*. at \*6.  In dismissing the complaint with prejudice and finding any amendment futile, the court reasoned the economic loss was not caused by tangible damage to the insured premises but by a government mandated statewide closure of bars and restaurants due to the pandemic. *Id*. at \*6 & n.8.

The Plaintiffs here fail to allege a direct physical loss either to Edison or Counter Culture.  Likewise, no direct physical loss is alleged as to the unrelated, local Cena restaurant.  Absent direct physical damage or loss, there is no covered cause of loss per the terms of the policies.  Under each policy, a covered cause of loss "means direct physical loss unless the loss is excluded or limited in this policy." Ed. Dkt. 31-1 at 56; CC Dkt. 30-1 at 56.

16

To recover under the civil authority provision, tangible damage to a property other than the insured premises is required to satisfy the terms of the policies.  The damage to the other property, here Cena, must cause a civil authority to prohibit access to the insured premises provided 1) the access to the area near the other, damaged property, which encompasses the insured premises, is prohibited by the civil authority and 2) the civil authority took such action in response to the dangerous condition on the other property which resulted from the covered cause of loss.  Plaintiffs do not satisfy the provision because the amended complaints do not allege any direct physical damage was caused to Cena or that any such damage also caused the denial of access to Edison and Counter Culture.

The allegations show that Cena was closed based on its employees' active infection with COVID-19: "Cena, a restaurant located at 1208 E. Kennedy Blvd., Tampa, FL 33602, which is within 1.4 miles of [Edison on Kennedy Blvd.] and under 1 mile from [Edison on Channelside Dr.], was allegedly closed down because staff contracted COVID-19 and the premises had to be fully disinfected"; and "Cena . . ., which is within 3.45 miles of Counter Culture, was allegedly closed down because staff contracted COVID-19 and the premises had to be fully disinfected."  Ed. Dkt. 31 ¶ 23; CC Dkt. 30 ¶ 22.  Cena was cleaned.  As in *Mama Jo's* and the cases thereafter, the necessity of cleaning the property to remove

particles resting on the property does not mean the property suffered direct physical damage or loss.

*Exclusion of Loss Due to Virus*

Assuming Plaintiffs allege, or could allege, direct physical damage or loss to any of the restaurants, the virus exclusion applies to deny coverage.  The virus exclusion states Scottsdale will not pay "for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease."  Ed. Dkt. 31-1 at 52; CC Dkt. 30-1 at 52.  The exclusion expressly applies to policy forms and endorsements that "cover business income, extra expense or *action of civil authority*."  *Id*. (emphasis added).

Plaintiffs first argue that the exclusion does not apply because the coronavirus was not the cause of their economic loss; rather, the government orders were the sole cause.  Notwithstanding this claim, the allegations of the amended complaints admit the orders were enacted in response to the pandemic. The orders attached to the amended complaints recognize their purpose of slowing the rapid and widespread outbreak of COVID-19.  The role of the pandemic in the economic losses cannot be ignored.  Because the pandemic was, at the very least, a contributing cause to the loss and because the virus exclusion by its terms applies to all elements of coverage, including the additional coverage under civil authority, the exclusion applies to the claims for loss in this case.

18

Second, Plaintiffs contend that should this Court determine the coronavirus played a part in the loss, then the concurrent cause doctrine requires a finding of coverage based on the independent, covered cause of the civil authorities' orders. The Court disagrees.  This is not a concurrent cause case.

Florida law squarely addresses the situation "when two or more perils converge to cause a loss and at least one of the perils is excluded from an insurance policy." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 697 (Fla. 2016).  Two competing doctrines exist to determine coverage: efficient proximate cause and concurrent cause.  *Id*. at 697–99.  Where one cause or peril discernibly sets another cause or peril in motion, the loss is attributable to the efficient or proximate cause that set all other causes in motion.  *Id*. at 697.  Where two equal and independent causes worked together to create the loss and the efficient or proximate cause cannot be determined, the concurrent cause doctrine applies.  *Id*. at 698.

The coronavirus is the peril that caused the government to enact orders restricting business.  The virus and the orders are not two equal independent concurrent causes that worked together to cause the loss.  The orders are wholly dependent on the virus.[11]  The orders, as they so state, were enacted to curtail the

---

[11] An illustration of an analogous situation supposes a policy exclusion for volcano eruption from all forms of coverage.  A volcano erupts and lava flows down the street 25 yards shy of a restaurant.  The government orders the neighborhood be evacuated by 5:00 p.m.  Any loss suffered by the restaurant is "a result of" the volcano because the volcano prompted the government to issue the evacuation order.

spread of the coronavirus and would not have been issued but for the pandemic. Because the orders were the direct result of, caused by, and arose from the prime excluded peril, the exclusion applies to deny coverage.  Other courts have reached the same conclusion.  *Nahmad*, 2020 WL 6392841, at *9; *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 20-cv-401-FtM-66NPM, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) ("Because Martinez's damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion.").[12]

Plaintiffs have already once been given the opportunity to amend their complaints.  An amended complaint may be dismissed with prejudice if the allegations taken as true would provide no basis for relief or when amendment would be futile.  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). Allowing amendment would be futile because any amendment would be insufficient as a matter of law.  *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

---

[12] Although Plaintiffs urge this Court to find the virus exclusion does not bar coverage and to permit this case to proceed to summary judgment, as was the determination in *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co.*, No. 20-cv-1174-Orl-22EJK, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020), the district court there was not presented with all of the relevant documents necessary to interpret the language of the complete policy.  *Id.* at *4.

It is therefore **ORDERED AND ADJUDGED**:

Defendant's motion to dismiss the Edison amended complaint (Ed. Dkt. 35) and motion to dismiss the Counter Culture amended complaint (CC Dkt. 33) are granted with prejudice.[13]  The Clerk is directed to enter judgment for Defendant and to close the case.

      **DONE AND ORDERED** at Tampa, Florida, on January 4, 2021.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[13] The Court recognizes it may have intimated at the hearing that Edison would be permitted the opportunity to amend its reformation count to allege circumstances requiring the inclusion of both restaurant locations in its claims for coverage.  Even assuming the coverage claims here were unequivocally applicable to both locations, the alleged losses do not trigger coverage for any location consistent with this order.